A96A1754. COWDELL v. DOE.
(483 SE2d 347)

BEASLEY, Judge.

Cowdell initiated a proceeding to adopt his wife's daughter, but the trial court ruled that the biological father was "known" and thus had to be notified pursuant to OCGA § 19-8-12 (a). This halted the adoption, and Cowdell appealed. An interlocutory appeal of the court's order was permitted.

The question is whether the biological father of the child sought to be adopted by the stepparent petitioner is "known" or "unknown" in the context of OCGA § 19-8-12. It is a matter of statutory construction. If he is "known," as the trial court ruled, he must either surren-

---

der his parental rights or be properly notified that the legal mother has consented to her spouse's adoption of the child. OCGA § 19-8-12 (a). If, on the other hand, the identity or location of the biological father who is not the legal father of the child is "not known" and he has not executed a surrender, then other very particularized steps must be taken by the court to protect his rights before they are terminated and adoption is permitted. OCGA § 19-8-12 (b).

The father in this case, Doe, is not the "legal father" as defined in OCGA § 19-8-1 (6), but is the "biological father" as defined in OCGA § 19-8-1 (1). The mother is the "legal mother," as defined in OCGA § 19-8-1 (7), is entitled to the little girl's custody, and "may exercise all parental power over the child." OCGA § 19-7-25. Her spouse, Cowdell, wishes to adopt her daughter and so provide the child with a legal father. He filed a petition for stepparent adoption pursuant to OCGA § 19-8-6 (a) (1), but neither paragraph (1) nor paragraph (2) of subsection (a) fit the circumstances because the child does not have a "legal father and legal mother" and there is no contention or evidence that the biological father has died. The legislature intended to permit stepparent adoption pursuant to this section, as shown in both subsections (g) and (j) of OCGA § 19-8-6.

Subsection (g), upon which petitioner relies, states: "Whenever the legal mother . . . consents to the adoption of her child by her spouse pursuant to this Code section, she shall execute an affidavit meeting the requirements of subsection (h) of Code Section 19-8-26." Subsection (j) states: "The parental consent by the spouse of a stepparent seeking to adopt a child of that spouse and required by subsection (a) of this Code section shall be as provided in subsection (l) of Code Section 19-8-26." Subsection (j) would not apply here, as the child does not have a legal father. Nevertheless, the mother provided the parental consent of the spouse to stepparent adoption in the form required. Petitioner Cowdell also filed, as required by OCGA § 19-8-13 (a) (4) (C), the affidavit described in OCGA § 19-8-26 (h), which petitioner's spouse, the child's legal mother, completed and signed.

The information required of the mother does not include the name and address of the biological father. Pursuant to OCGA § 19-8-26 (h) (1) (F), she has "the right not to disclose the name and address of the biological father of her child should she so desire." She must, however, give under oath particularized information with respect to whether the father "has lived with the child, contributed to its support, provided for the mother's support (including medical care) during her pregnancy or during her hospitalization for the birth of the child, or made an attempt to legitimate the child," and set forth all sources of financial assistance. OCGA § 19-8-26 (h) (1) (G) and (H). At the hearing on Cowdell's motion to terminate the father's rights, the mother acknowledged that she knew the identity but stood her

ground and stated further that the father was unaware of the child because she never told him.

The law gives to the mother this right and commensurate obligation in all instances of adoption covered by the law, whether through the Department of Human Resources or any child-placing agency as provided in OCGA § 19-8-4, whether by a third party who is neither the stepparent nor relative of the child as provided in OCGA § 19-8-5, whether by the spouse of a parent as provided in OCGA § 19-8-6 (the section invoked by Cowdell), or whether by a relative as provided in OCGA § 19-8-7. This universal usage for which the law prescribes the affidavit specified in OCGA § 19-8-26 (h) carries with it the statutorily created mother's right.

The affidavit figures prominently in the procedure established to protect the parental rights of the biological father who is not the legal father, when the identity or location of the father is not known and he has not executed a surrender of parental rights. The court "shall be authorized to consider" that affidavit to determine what further inquiry must be required or what notice must be given before the biological father's rights are terminated. OCGA § 19-8-12 (b) (3). In part, the court must determine whether, in effect, the biological father has abandoned the child or instead has established a familial bond with the child. The sworn information required of the mother in OCGA § 19-8-26 (h) (1) (G) and (H) supplies the factors for the court to consider in making this determination. If the father has performed any of the specified acts, the court must decide if his conduct was sufficient to establish a familial bond, and then the court must consider whether to require petitioner to make further efforts at inquiry and notice to him. The procedure is detailed and explicit and is established to assure that the biological father's parental rights are not terminated without due process of law.

Applying the rules of statutory construction, it is ineluctably certain that when the mother exercises her right, the biological father is "not known" for purposes of OCGA § 19-8-12 (b). Were it not so, the right which is expressly given in OCGA § 19-8-26 (h) (1) (F) and carried over to OCGA § 19-8-12 (b) (3) would be meaningless. It would have no effect other than to preclude adoption altogether, an intent opposite that demonstrated by the legislative scheme.

We have upheld the efficacy of that right in *Northcraft v. Doe*, 192 Ga. App. 666 (385 SE2d 756) (1989), where the same provisions of the predecessor statute were involved. As relevant, former OCGA § 19-8-4 (c) (5) (F) is, as of 1990, OCGA § 19-8-26 (h) (1) (F). Ga. L. 1990, p. 1572, § 5. The only difference, with respect to our current inquiry, is that the affidavit form to be signed by the mother contains the express alternative statement that the biological father is "Known to me but I expressly decline to identify him or provide his

address because _____." This requirement of a stated reason for the exercise of the right was not in the statutory affidavit form before the 1990 amendment, but the nondisclosure right of the mother existed nevertheless. The 1990 amendment also assured that she knew she had that right.

Former OCGA § 19-8-7 (b) (2), which was in effect when *Northcraft* was decided, is now OCGA § 19-8-12 (b) (3). It was changed by the same 1990 Act to provide a more explicit two-step procedure for terminating the biological father's rights. The requirement that petitioner show that "reasonable efforts have been made to identify and locate the father," referred to in *Northcraft*, was retained for instances where the biological father's conduct in certain particulars has established a modicum of familial bond. Then, as now, the legal mother could exercise her right of nondisclosure in adoptions by third parties, spouses, or relatives. Former OCGA §§ 19-8-3 (a) (1), (2), (3), (4) and (5); 19-8-7 (b) (1) and (2).

In *Northcraft*, too, the legal mother knew the identity and whereabouts of the putative biological father. Her refusal to disclose this information did not prevent adoption but instead required the careful statutory procedure for assurance that the biological father's rights be ascertained and protected. As the court held in that case, so here, exercise of the mother's right does not preclude adoption because that "cannot be in the child's best interest." Id. And that, after all, is paramount.

The problem is that, with respect to stepparent adoptions under OCGA § 19-8-6, the only instances for which the "unknown biological father" procedure is provided in paragraph (3) of OCGA § 19-8-12 (b) are those coming under OCGA § 19-8-6 (a) (2), which are the "only one parent still living" stepparent adoptions. See paragraph (2) of OCGA § 19-8-12 (b). We face the absence of a paragraph (3) in OCGA § 19-8-6 (a) which would cover stepparent adoption by the spouse of a mother of a child whose father is biological only and not legal. That is what confronts Cowdell.

The dilemma is that the legislature left a gap in the stepparent adoption section (OCGA § 19-8-6) by omitting to provide for adoption by the husband of the legal mother of a child whose biological but not legal father is living. No provision is made for termination of his rights through the procedure specified in OCGA § 19-8-12 (b). Under the Code's adoption procedures in force prior to the amending act of 1990 (Ga. L. 1990, p. 1572), that may have been possible pursuant to then-current OCGA § 19-8-3 (a) (2) by way of termination of the biological father's rights in accordance with then-current OCGA § 19-8-7 (b).

The court erred in concluding that the father was "known." But Cowdell's petition cannot be granted until the legislature fills in the

void in the law.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 4, 1997.

*Savell & Williams, John M. Williams, William E. Turnipseed,* for appellant.